IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| PATRICIA PHILLIPS o/b/o ) | |
| PAUL S. PHILLIPS, deceased, ) | |
| **)** | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 2:14-CV-1326-LSC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Commissioner of Social Security**,** ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

**I.   Introduction**

The plaintiff, Paul Phillips[1], appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Mr. Phillips timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mr. Phillips was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision (tr. at 57), and he has a high school education. (Tr. at

---

[1] Paul Phillips is referred to throughout this opinion as plaintiff. Paul Phillips died on January 31, 2014. (Tr. at 157.) Patricia Phillips, his wife, was substituted as the party of interest on February 27, 2014. (Tr. at 104.)

168.) His past work experiences include employment as a security guard and store laborer. (Tr. at 169.) Mr. Phillips claims that he became disabled on November 22, 2010, due to severe back pain, anxiety, and hearing voices. (Tr. at 25.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA").  *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments.  *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled.  *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Mr. Phillips meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision. (Tr. at 22.) He further determined that Mr. Phillips had not engaged in SGA since the alleged onset of his disability. (*Id.*) According to the ALJ, Plaintiff's degenerative joint disease of the lumbar spine; obesity; dysthymic disorder; and panic disorder were considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 23.) The ALJ did not find Mr. Phillips's allegations to be totally credible, and he determined that he had the following RFC: light work except that he could never climb ladders, ropes or scaffolds, but could occasionally stoop, kneel, crouch, crawl, balance, and climb

ramps or stairs. (Tr. at 25.) He was required to avoid all exposure to operational control of moving machinery, commercial driving, and unprotected heights. (*Id.*) He was limited to simple, routine, and repetitive tasks in a low stress job, defined as having only occasional changes in the work setting, with only occasional interaction with the public and co-workers. (*Id.*)

According to the ALJ, Mr. Phillips was unable to perform any of his past relevant work. He is a younger individual, has a high school education, and is able to communicate in English, as those terms are defined in the regulations. (Tr. at 28.) The ALJ determined that Plaintiff had no transferable skills from any past relevant work, but that transferability of job skills is not material to the determination of disability in this case. (*Id.*) The ALJ found that Mr. Phillips had the RFC to perform a significant range of light work. (*Id.*) Even though Plaintiff could not perform the full range of light work, the ALJ relied on the testimony of the vocational expert that there are a significant number of jobs in the national economy that he was capable of performing, such as electrical assembler, poultry trimmer, and food preparation worker. (*Id.*) The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision." (*Id.*)

## II.   Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the

proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. Discussion

Mr. Phillips alleges that the ALJ's decision should be reversed and remanded for three reasons. First, he believes that the ALJ improperly rejected his treating physicians' Medical Source Opinions ("MSO") when the ALJ found that he was capable of performing a significant range of light work. (Doc. 11 at 5.) Second, he alleges that the ALJ did not fairly consider his obesity pursuant to Social Security Ruling ("SSR") 02-1p when determining the RFC. (Doc. 11 at 7.) Third, he claims that the ALJ did not properly develop the record pursuant to 20 C.F.R. § 404.1512. (Doc. 11 at 9.)

### A.   Treating Physicians' Diagnoses

The plaintiff contends that the ALJ erred by rejecting the opinion of two treating physicians. A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford*, 363 F.3d at 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The ALJ had good cause to give little weight to Dr. Staudinger's July 14, 2010, report because it was inconsistent with his subsequent medical records. Dr. Staudinger treated the plaintiff at weekly intervals between June 11, 2010, and August 20, 2010. (Tr. at 280-306.) On July 14, 2010, Dr. Staudinger recommended that Plaintiff not lift anything over ten pounds, not bend more than five times per hour, not push or pull anything with over ten pounds of force, and should be sitting 50% of the time. (Tr. at 292.) Dr. Staudinger prescribed an intensive physical therapy program. The physical therapy program was apparently successful, as Dr. Staudinger modified these restrictions on August 13, 2010, and returned the plaintiff to regular activity. (Tr. at 282.) The plaintiff reported that he no longer experienced pain, weakness, or numbness in his lower back. (*Id.*) The only remaining symptom was infrequent soreness. (*Id.*) Dr. Staudinger reported that the plaintiff had a normal gait, with no tenderness or swelling. (*Id*). While Dr. Staudinger's July 14 report was consistent with the evidence and condition of the plaintiff at that time, the ALJ correctly gave it limited weight because of the subsequent improvement of the plaintiff's condition. *See Crawford*, 363 F.3d at 1159 (finding that ALJ properly discounted treating physician's disability opinion partly because it was inconsistent with physician's subsequent records indicating claimant was "doing well" and "doing great"). The July 14 report was no longer bolstered

by the evidence, and was inconsistent with the doctor's subsequent reports. (Tr. at 27.) The ALJ's rejection of this report is supported by substantial evidence.

Dr. Shirley, the plaintiff's psychiatrist, reported in August 2012 that the plaintiff has marked limitations in social functioning, responding to customary work pressures, and responding appropriately to supervision and coworkers in a work setting. (Tr. at 373-74.) The ALJ correctly rejected those findings because Dr. Shirley did not cite any objective findings and the report is inconsistent with the treatment notes. Dr. Shirley had been treating the plaintiff at regular intervals for six months before issuing the report, and the plaintiff had shown improvement during this time. (Tr. at 340-60.) When Dr. Shirley initially evaluated the plaintiff in February 2012, she assigned a GAF score of 55, indicating no more than moderate symptoms under the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition. (Tr. at 363.) After this initial diagnosis, Dr. Shirley's treatment notes indicate significant improvement. (Tr. at 340-60.) On April 5, 2012, the plaintiff reported that he was doing much better overall. (Tr. at 355.) He stated that he had been more social with his neighbors and that his social fears were decreasing. (*Id.*) On June 12, the plaintiff reported that he was becoming more involved in his church, and that he had not had any depressive episodes over the previous two weeks. (Tr. at 340.) The plaintiff experienced some setbacks along

the way, but the notes indicated overall improvement. (Tr. at 340-60.) Dr. Shirley did not explain the discrepancy between the notes and the August report, and the ALJ properly gave the report little weight. (Tr. at 27.) Dr. Shirley's report was also inconsistent with the consultative exam conducted by Renee Myers, Ph.D. on February 1, 2011. (Tr. at 319-22.) Dr. Myers assigned a GAF score of 65, indicating mild symptoms. (Tr. at 322.) Dr. Myers stated that the plaintiff was pleasant and cooperative with only mild depression. (Tr. at 321.) Plaintiff claimed that he had a marked limitation in concentration, but Dr. Myers stated that he was able to remember 3 out of 3 items after a delay, and able to recall six digits forward and three digits backward. (*Id.*)

The ALJ had good cause to disregard the reports of both Dr. Staudinger and Dr. Shirley. Dr. Staudinger's July 14, 2010, report was not valid at any time after the alleged onset date. Shirley's report was contrary to her own treatment notes which indicated significant improvement as well as Dr. Myers' consultative exam.

### B. ALJ's Consideration of Plaintiff's Obesity

Plaintiff contends that the ALJ's RFC findings are not supported by substantial evidence because he failed to adequately consider Plaintiff's obesity in combination with other impairments. (Doc. 11 at 6-7.) The Eleventh Circuit has made clear on several occasions that statements and findings by an ALJ can show

that a plaintiff's impairments have been considered in combination. *See Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (the ALJ specifically stated that "the medical evidence establishes that [Wilson] had [several injuries] which constitute a severe impairment, but that he did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4."); *see also Jones v. Dept. of Health and Human Services*, 941 F.2d 1529, 1533 (11th Cir. 1991).

Obesity can combine with other impairments to make an individual disabled even if the other impairments are not severe enough on their own to do so. *See* SSR 02-1p. Obesity can exacerbate both mental and physical conditions. (*Id.*) "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence to support his claim." *Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003); *see also Doughty*, 245 F.3d at 1278 (11th Cir. 2001); 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require"). Moreover, it is Plaintiff's burden to provide a medical record that is complete, and if he fails to do so, the ALJ will make a decision based on the evidence of record. *See* 20 C.F.R. §§ 404.1513(e); 404.1516.

The ALJ found that the plaintiff's obesity was a severe impairment. (Tr. at 22.) However, it was not severe enough to meet or medically equal the severity of the listed impairments. (Tr. at 23.) The ALJ discussed the plaintiff's obesity and stated that it was a contributing factor to limiting the plaintiff to light work. (Tr. at 27.) The ALJ did not specifically mention SSR 02-1p, but discussing the obesity shows that it was properly considered. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009). The ALJ explicitly discussed the plaintiff's obesity when determining the RFC. He found that it limited him to light work with certain restrictions, but did not preclude him from all SGA. (Tr. at 27.)

Plaintiff merely says that he is obese and that obesity can complicate and exacerbate impairments, but does not show how obesity limited his ability to work. The plaintiff has the burden of showing how the impairment prevents him from engaging in SGA. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). The severity of an impairment must be measured in terms of how it limits the plaintiff's ability to work. *See McCruter v. Bowen*, 791 F.3d 1544, 1547 (11th Cir. 1986). Plaintiff did not properly demonstrate how the obesity affected his ability to work.

**C.     Development of the Record**

The plaintiff contends that the ALJ did not properly develop the record. Specifically, he argues that the ALJ erred by not obtaining a MSO by a medical expert or by a consultative examiner. (Doc. 11 at 9.)

The ALJ has a duty to develop the facts fully and fairly and to probe conscientiously for all of the relevant information. *Ware v. Schwieker*, 651 F.2d 408, 414 (5th Cir. 1981). However, in all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding her impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5). Furthermore, social security regulations provide that "when the evidence [on record] . . . is *inadequate* for us to determine whether you are disabled, [the ALJ] will need additional information to reach a determination or a decision." 20 C.F.R. §§ 404.1512(e), 416.912(e) (emphasis added). Therefore, where the ALJ's findings are supported by evidence sufficient for a decision, the ALJ is not obligated to seek additional medical testimony. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). An ALJ has many options, but no affirmative requirements, for settling an inconsistency or insufficiency in a claimant's medical record. *See* 20 C.F.R. § 404.1520b. He has the option to contact the treating physician, ask the claimant for addition records, request a consultative

examination, or ask the claimant and/or others for more information. (*Id.*) The ALJ may exercise all or none of these potential remedies. (*Id.*) He is not required to take any of those steps if he determines that weighing the available evidence will be sufficient. (*Id.*)

Furthermore, Plaintiff must make a "clear showing of prejudice before it is found that the [plaintiff's] right to due process has been violated to such a degree that the case must be remanded to the [ALJ] for further development of the record." *Graham v. Apfel*, 129 F.2d 1420, 1422 (11th Cir. 1997). Thus, Plaintiff must show that the lack of a record created an evidentiary gap, resulting in unfairness or clear prejudice. *See Edwards*, 937 F.2d at 586 (finding that plaintiff was not prejudiced by a lack of representation because record did not contain any discernible evidentiary gaps).

In this case, the ALJ had the necessary evidence to determine the plaintiff's RFC. The ALJ had access to notes and reports from several doctors who treated the plaintiff, and he articulated what evidence he relied on to reach his findings. (Tr. at 26-29.) The ALJ cited the medical imaging and examinations, the claimant's improved mental symptoms with treatment, and the claimant's conservative and limited treatment history. (Tr. at 27.) The plaintiff improved both physically and mentally every time he chose to receive treatment for his

impairments. Physical therapy improved his back condition to the point that Dr. Staudinger released him from care with no restrictions on his activity. (Tr. at 280.) The plaintiff claimed that his back eventually regressed to render him disabled, but he did not seek care for his back until nearly a year after his alleged onset date. (Tr. at 229.) The ALJ clearly articulated why the evidence in the record was sufficient to reach a decision:

> Though prior records indicate significant improvement from physical therapy and trigger point injections, despite his testimony stating otherwise, he has not pursued additional treatment beyond taking medication. The claimant's gap in treatment and lack of more intensive treatment measures suggest his symptoms are not as disabling as alleged.

(Tr. at 26.)

The ALJ had access to Dr. Shirley's notes and used them to determine the plaintiff's mental health impairments. The notes show an individual with mental health impairments, but also show significant improvement in his symptoms over time. (Tr. at 340-60.) The notes provided the ALJ with the necessary information to reach his conclusion about the mental health impairment of the plaintiff. The ALJ displayed no prejudice in relying on the evidence he had when rendering his decision. It was not necessary to conduct more investigation or solicit further medical opinions.

## IV.  CONCLUSION

Upon review of the administrative record, and considering all of Mr. Phillips's arguments, the Court finds the Commissioner's decision was supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON JULY 14, 2015.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704